[Crim. No. 3074.   Third Dist.   Oct. 27, 1960.]

THE PEOPLE, Respondent, v. O. B. TAYLOR, Appellant.

Lloyd C. Griffith, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Doris H. Maier and John F. Foran, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—O. B. Taylor was found guilty by a jury of two counts of manslaughter committed in the driving of a vehicle with gross negligence (Pen. Code, § 192, subd. 3(a)) and one count of driving a vehicle while under the influence of intoxicating liquor and causing bodily injury. (Veh. Code, § 23101, formerly § 501.) He has appealed from the judgment entered and from the order of the court denying his motion for a new trial.

Appellant's principal contention is that he did not receive a fair and impartial trial. While appellant states that the verdict was contrary to the evidence, he does not seriously argue this contention, merely stating that "there was certainly a sufficient conflict in the testimony . . ., to warrant and to require the Jury to find that there was reasonable doubt as to the guilt of the defendant, . . . ." However, before discussing appellant's contention that he did not receive a fair trial, we shall briefly summarize the evidence as shown by the record.

Sometime between 2:30 a.m. and 4 a.m. of the morning of January 31, 1959, appellant left Los Angeles in his 1949 Ford and headed north toward the San Francisco Bay Area. Between 8:30 a.m. and 9 a.m. appellant stopped for gasoline. He twice asked the attendant the way to San Francisco. He was twice given the answer. Appellant then entered his car, drove about 100 feet, stopped his car, got out, walked back to the station and again asked the way to San Francisco. The attendant testified that he could smell liquor on the appellant's breath.

About 9:48 a.m. Officer Robert N. Houston of the California Highway Patrol was informed that there had been an accident on State Highway 152. It was a foggy morning, according to the officer, with visibility of about 150 feet. At the scene of the accident the officer found that two cars were involved, a 1956 Chevrolet and a 1949 Ford, and that the two cars were resting almost bumper to bumper in the eastbound lane. One person was dead and the two other persons involved in the accident had major injuries (one died later). State Highway 152, at the point of the accident, was a two-lane road running east and west. The officer found that the point of impact was some 6 feet south of the center line of the highway. The officer testified that from the physical evidence at the scene of the accident he ascertained that the Ford was traveling in a westerly direction in the eastbound lane, and that the Chevrolet was eastbound in the proper lane.

Appellant was found behind the wheel of his Ford. A broken whiskey bottle, the bottom portion of which contained whiskey, was found in the front seat. The cap of the bottle was twisted off. When appellant was moved, the officer smelled liquor on his breath. About two hours after the accident the officer spoke to appellant who told him that he (appellant) had two double shots of whiskey before he left Los Angeles; that he had a couple of beers en route; and that he did not know what happened except that all of a sudden the other car appeared on his side of the road and he could not get away from it. It was the officer's opinion that appellant was under the influence of intoxicating liquor.

Blood was taken from appellant at 11:50 a.m. A chemical analysis of the blood disclosed the alcoholic content to be .103 milligrams per cent. Dr. Zdenek Fluss, a pathologist, testified that it was possible to tell from the results of a blood-alcohol test whether or not a person is under the influence of alcohol. The doctor testified that between .05 and .15 there appears a deficiency in judgment and vision and there is a slowing of the reflexes. In this state a person may be described as ''dizzy and delightful.'' The doctor testified that alcohol in blood oxidizes at the rate of .012 to .015 milligrams per hour so that anyone who had an alcoholic content of .103 at 11:50 a.m. would have had a blood-alcohol content of .128 to .133 at 9:30 a.m. In the opinion of the doctor this blood-alcohol content would impair the ability of the vast majority to drive an automobile.

In a statement to the district attorney the appellant said that he thought that he was on a four-lane highway; that the 1956 Chevrolet came at him in his lane; and that he pulled to the right side of the road. (The physical evidence contradicted each statement.)

Appellant testified in his own behalf. He claimed that he had one small drink of whiskey before leaving Los Angeles and one beer on the way. He further testified that it was very foggy; that he pulled up alongside a station wagon, passed it, then he saw lights from another car, and the car just pulled over to his side of the road. Appellant claimed that he stopped his car before the impact.

At the opening of the defense case, the medical record librarian of the Madera County Hospital was called as a witness. On examination it was brought out that defendant's counsel had presented an authorization from the defendant

and requested permission to examine the medical records; that permission was refused because it was the policy of the district attorney not to permit such records to be seen unless the records were subpoenaed. The court then told defense counsel the records were in court and asked counsel if he desired to see them. The following colloquy then took place: "THE COURT: The hospital records are here. Do you want to look at them? MR. GOODWIN: They would do me no good at this moment. THE COURT: You are not going to put on a show here, Mr. Goodwin, to prejudice the People or anyone else. If you want those hospital records, you take them and look at them. MR. GOODWIN: I wanted them Friday. THE COURT: You take them now, if you want them. MR. GOODWIN: I don't want them. I wanted them Friday. THE COURT: It doesn't matter. You have an opportunity to look at them now, and the Court will recess and give you all the opportunity you want to examine them. MR. GOODWIN: I wanted them Friday. THE COURT: I don't care if you wanted them Friday or last month."

Appellant contends that his rights were infringed upon and prejudiced by the remarks of the court to such an extent as to deprive him of a fair and impartial trial. We do not agree. While the remarks of the court might well have been couched in gentler language, we do not believe that any prejudicial error resulted. Defense counsel was of course entitled to see the hospital records and neither the district attorney nor the hospital should have refused permission to do so. The court stated to appellant's counsel that the hospital records were in court and that it would declare a recess so that appellant's counsel could examine them. Under such circumstances it is difficult to understand how appellant could have suffered any prejudice by the refusal to permit inspection at an earlier time.

[■■] Appellant contends also that the district attorney was guilty of prejudicial misconduct when he stated to the jury in his closing argument to the jury: ". . . The facts in this case are, of course, pertinent to you. Now, he has tried to show you inferentially that we tried to keep information from him, namely, that he tried to see some medical records. I think you saw through that. That was a real grandstand play. . . ." However, no objection was made to these remarks nor was the court requested to instruct the jury to disregard

them. Under such circumstances the failure to object is generally held to amount to a waiver of the objection.

The judgment and order are affirmed.

Van Dyke, P. J., and Peek, J., concurred.