Filed 6/24/24

# TO BE PUBLISHED IN THE OFFICIAL REPORTS

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

**APPELLATE DIVISION**

THE PEOPLE,

      Plaintiff(s) and Respondent(s),

    v.

CHRISTOPHER TURNTINE,

      Defendant(s) and Appellant(s).

Appellate Division No.: CA296018
Trial Court Case No.: C414590
Trial Court Location: Central Division

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**

APPEAL from the December 16, 2022, verdict and sentence, Patricia Cookson, Judge. AFFIRMED with directions.

## Statement of the Case

On October 28, 2022, Appellant was arraigned and pled not guilty to a complaint charging him with a violation of section 23152, subdivision (a), Driving Under the Influence of Alcohol (Count One), and a violation of section 23152, subdivision (b), Driving While Having a Measurable Blood Alcohol of .08% or greater (Count Two).

Trial began on December 13, 2022. During in limine motions, Appellant moved to exclude expert testimony that the expert believes "impairment for driving purposes is present in individuals with a 0.05% BAC." In Appellant's papers and argument, the motion was made under Evidence Code section 352 and on the grounds that it is not the law in California and would confuse the jury.

The motion was denied. The motion was not renewed during testimony. Nor were any corrective instructions requested.

On December 16, 2022, a jury found Appellant guilty of Count One and not guilty of Count Two. Appellant was sentenced immediately. Appellant filed his notice of appeal on January 12, 2023. A *Wende* brief was filed on May 26, 2023.

On July 20, 2023, this Court requested supplemental briefing on two issues:

1. Whether the prosecution expert's testimony regarding a person being "impaired for purposes of driving" and "under the influence for purposes of driving" at a .05% BAC improperly invited the jury to nullify the legislative determination regarding the per se offense level being .08%. And if it did, whether such an invitation to nullify the legislative determination is prohibited under the reasoning of *People v. Vangelder* (2013) 58 Cal.4th 1.

2. Whether the defense properly preserved this issue through in limine motions. (See *People v. Morris* (1991) 53 Cal.3d 152, 187-191.)

Appellant filed an Amended Opening Brief on August 15, 2023. Respondent filed his brief on November 15, 2023. This Court then requested additional supplemental briefing to address two cases significant to the analysis: *Burg v. Municipal Court* (1983) 35 Cal.3d 257 and *People v. McNeal* (2009) 46 Cal.4th 1183. Appellant filed his Supplemental Brief on February 29, 2024. Respondent's Supplemental Brief was filed on March 29, 2024.

## Statement of Facts

On September 16, 2022, Officer Kyle Voss was patrolling within the city of La Mesa when he observed the vehicle in front of him had expired registration. He conducted an enforcement stop on the vehicle. As the vehicle was pulling over Officer Voss observed the right rear wheel of the vehicle strike the curb. Officer Voss contacted the driver, Appellant, and immediately observed signs and symptoms of intoxication. Appellant's eyes were red and watery, his speech was slurred, and the odor of alcohol was emitting from his vehicle. This prompted Officer Voss to ask Appellant where he was coming from and how much alcohol he had to drink. He responded  he came from a friend's home and had one drink.

/ / /

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**

Officer Voss conducted a modified horizontal gaze nystagmus (HGN) test on appellant as he was still seated in his vehicle. Appellant's eyes were unable to track without involuntarily jerking, indicating that a full DUI evaluation was necessary. Again, Officer Voss asked Appellant whether he drank that evening. This time Appellant responded that he had three beers. Officer Voss then instructed Appellant to exit his vehicle to conduct a series of field sobriety tests.

During the formal HGN test, Appellant again displayed lack of smooth pursuit in both eyes and exhibited all six possible signs of intoxication. On the one-leg stand test Appellant displayed symptoms of intoxication when he placed his foot on the ground, swayed, and was unable to keep his balance. Appellant's performance on the Romberg test also indicated he was under the influence. Two breath samples collected from Appellant 40 minutes after the initial stop yielded a BAC of 0.083% and 0.078%. Based on the officer's observations, Appellant's performance on the field sobriety tests, and the results of the chemical breath test, Officer Voss testified it was clear Appellant had driven under the influence of alcohol.

At trial, toxicology expert Jasmine Diaz also testified. She explained the two kinds of impairment, mental and physical, that occur when someone drinks alcohol. She described the symptoms of each impairment and how it affects a person's ability to drive safely. Ms. Diaz additionally opined that red, watery eyes, the odor of alcohol, some slurred speech, lack of smooth pursuit, swaying and loss of balance in the stand test, eye lid tremors, and estimating 26 seconds as 30 seconds, would indicate someone is under the influence. She also opined that a person is impaired, or, under the influence for purposes of driving, at a BAC of 0.05% or higher.

## DISCUSSION

### I. No error was preserved.

Appellant moved through in limine motions to prohibit the prosecution expert from stating that all individuals are impaired for purposes of driving at .05% BAC, arguing it is a misstatement of law and would confuse the jury. The trial court denied that motion. Appellant did not renew the objection during trial testimony or argument. Appellant did not request an Evidence Code 402

/ / /

/ / /

hearing regarding the extent of the expert's qualifications or the basis for an opinion that everyone is under the influence at a BAC of .05%. Nor did Appellant request instructions to correct the perceived misstatement of law.

"The general rule is that 'when an in limine ruling that evidence is admissible has been made, the party seeking exclusion must object at such time as the evidence is actually offered to preserve the issue for appeal' [citation omitted], although a sufficiently definite and express ruling on a motion in limine may also serve to preserve a claim." (*People v. Brown* (2003) 31 Cal.4th 518, 547.) To be sufficient to preserve error for appeal a motion in limine must satisfy "the basic requirements of Evidence Code section 353, i.e.: (1) a specific legal ground for exclusion is advanced and subsequently raised on appeal; (2) the motion is directed to a particular, identifiable body of evidence; and (3) the motion is made at a time before or during trial when the trial judge can determine the evidentiary question in its appropriate context." (*People v. Morris* (1991) 53 Cal.3d 152, 190 disapproved of on other grounds by *People v. Stansbury* (1995) 9 Cal.4th 824.) "[I]f a motion in limine does not satisfy each of these requirements, a proper objection satisfying Evidence Code section 353 must be made to preserve the evidentiary issue for appeal." (Ibid.) The in limine motion here fails two of these basic requirements.

First, the motion was not on a legal ground subsequently raised on appeal. The motion in limine was made under Evidence Code section 352 and framed as the expert testimony potentially misstating the law to the confusion of the jury. Appellant did not argue that the testimony should be excluded because of a contrary "legislative determination". Nor did Appellant assert a separation of powers violation. In other words, the basis for reversal relied on by the dissent was never articulated to the trial court, and therefore it never had an opportunity to consider its ruling in that context.  These distinctions from the standard question of admissibility of expert testimony (based on foundation or relevance) is part of what the dissent relies on in concluding that there is error and that the issue should be reviewed under a different standard than abuse of discretion. As that is a significant part of the analysis, in order for the in limine motion to have preserved error it should

/ / /

/ / /

have alerted the trial court to the basis for the motion. A litigant does not preserve error by generically moving to exclude evidence, and then searching for a reason to exclude during the appeal. See *People v. Rios* (2024) 99 Cal.App.5th 1128, 1139.

Second, the motion was not made at a time the trial judge could "determine the evidentiary question in its appropriate context." While there was a written report discussed, the motion was made before the witness' foundation was laid, which is important for the context of what the appropriate scope of the witness' testimony should be. Nor did Appellant request a 402 hearing, which could have provided the trial court with the context to determine the evidentiary issue.

Because there was no contemporaneous objection to the testimony, and the in limine was not on the raised appellate issue or at a time when the trial court had sufficient context to determine the issue, no error was preserved for review. While we would deny relief on a *Wende* review for the lack of preservation, we will address the merits because of our colleague's dissent.

## II. Allowing the testimony was not an abuse of discretion under Evidence Code sections 352 or 801.

The trial court ruled the expert's opinion was admissible under Evidence Code section 352. The error the dissent finds is fundamentally an issue regarding the admissibility of an expert opinion under Evidence Code section 801. Under either basis the standard of review is an abuse of discretion.

Appellate courts "review the trial court's ruling on the admissibility of expert testimony for abuse of discretion." *People v. Watson* (2008) 43 Cal.4th 652, 692 citing *People v. Smith* (2003) 30 Cal.4th 581, 627.) "We review a trial court's decision to admit evidence over an Evidence Code section 352 objection for abuse of discretion." (*People v. Powell* (2018) 5 Cal.5th 921, 961.) In evaluating whether there was an abuse of discretion a "decision will not be reversed merely because reasonable people might disagree." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) A "trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Ibid.*)

Here, the testimony was within the bounds of judicial discretion to admit. It appears the dissent agrees that it is acceptable for a toxicologist to opine that everyone is under the influence at

a .05% BAC. Our understanding is the dissent finds fault with expert testimony that all individuals are under the influence "for purposes of driving." Neither Appellant nor the dissent has cited any case holding it is impermissible for a scientific expert to express the opinion that all persons are impaired for purposes of driving at a .05%. In our experience this is not an uncommon expert opinion in DUI cases. To be fair, we have not found a case upholding such testimony either.

Ms. Diaz was not giving a legal opinion, but a scientific one. She was identified as a toxicologist with expertise in toxicology. The testimony she gave as to the basis underlying her opinion was from scientific studies, not legal ones. "Testimony in the form of an opinion that is otherwise admissible is not objectionable because it embraces the ultimate issue to be decided by the trier of fact." (Evid. Code, § 805.) Such an opinion cannot be as broadly phrased as an opinion that a defendant is guilty. (*People v. Prince* (2007) 40 Cal.4th 1179, 1227.) Ms. Diaz's opinion was not that the defendant was guilty. It was that, in her opinion as a toxicologist, anyone with a BAC of .05% was under the influence for purposes of driving. Notably, her testimony did not touch on the necessary element that the defendant was driving and so would not be stating that the defendant satisfied all the elements of the offense. She did not testify that the jury should ignore other evidence of impairment beyond the BAC. Nor did she testify that she had any personal knowledge about the facts of this case. Because of this, the opinion was not even impliedly an opinion of guilt. As in *People v. Prince*, here the jury was instructed that they were the exclusive judges of credibility, were not bound by the expert's opinion, and could give it the weight they thought it deserved after considering the basis of the opinion.

There has been no legislative determination that would raise separation of powers issues in allowing this testimony. The California Supreme Court in *Burg v. Superior Court* described the setting of the percentage of blood alcohol for the 23152(b) per se offense as a legislative determination. "Scientific evidence and sad experience demonstrate that any driver with 0.10 percent blood alcohol is a threat to the safety of the public and to himself. [citations omitted] Section 23152, subdivision (b), represents a legislative determination to that effect." (*Burg v. Municipal Court* (1983) 35 Cal.3d 257, 267–268.) Clearly *Burg* did not preclude the admission of evidence of impairment at lower BAC levels in support of a 23152(a) violation (i.e., "the generic

count). *Burg* addressed only the per se count, which requires no evidence that the driver was actually impaired. The legislative determination discussed in *Burg* and the BAC discussion in *Burg* solely relate to the constitutionality of subdivision (b). Subdivision (a), and its statutory and evidentiary requirements, were not at issue in *Burg*. The Court in *Burg* did not discuss or consider any legislative determination as to subdivision (a). Even the words used to describe the legislative determination do not reference or relate to subdivision (a).

Because the legislative determination in *Burg* relates only to subdivision (b), it would be improper to conclude *Burg* stands for a legislative determination that for blood alcohol alone to support a finding of being impaired for purposes of driving [for subdivision (a)], the blood alcohol must be at the level described in subdivision (b). (See *People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10 ["It is axiomatic that cases are not authority for propositions not considered"].)

The legislature created presumptions to evaluate whether someone is driving under the influence for the (a) count. The presumptions describe how a BAC of between .05-.08% can be used. "If there was at that time 0.05 percent or more but less than 0.08 percent, by weight, of alcohol in the person's blood, that fact shall not give rise to any presumption that the person was or was not under the influence of an alcoholic beverage, but the fact may be considered with other competent evidence in determining whether the person was under the influence of an alcoholic beverage at the time of the alleged offense." (Veh. Code, § 23610, subd. (a)(2).) This section merely prohibits *presuming* that a BAC between .05 and .08 proves the driver was impaired. It does not preclude, as in the case at bar, expert testimony about the effect of alcohol on drivers. No court has ever found that the language in Vehicle Code section 23610 constitutes a legislative determination that evidence of impairment based on BAC below .08 is inadmissible. Nor has any court found that 23610 is a legislative determination at all, rather than simply a bar against utilizing a mandatory presumption to reach a conclusion in the absence of evidence. "A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action. A presumption is not evidence." (Evid. Code, § 600, subd. (a).) A presumption is a legal directive, not a factual or scientific determination by the legislature.

///

Considering all of these factors in analyzing the trial court's decision to allow the expert testimony, this Court finds it was within the court's discretion to permit the toxicologist's testimony.

### III. Even if there was error, it was harmless.

Even if we assume the admission of the expert's opinion was error, it was harmless and does not require reversal. Generally, an appellate court reviews the erroneous admission of evidence under the Watson standard. (*People v. Gonzales* (2011) 51 Cal.4th 894, 924.) The *Watson* standard asks whether it is "reasonably probable that a result more favorable to defendant would have been reached in the absence of the alleged error." (*People v. Thomas* (2011) 52 Cal.4th 336, 356.) When applying the *Watson* standard, "an appellate court may consider, among other things, whether the evidence supporting the existing judgment is so relatively strong, and the evidence supporting a different outcome is so comparatively weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*People v. Breverman* (1998) 19 Cal.4th 142, 177, disapproved of on other grounds, *People v. Schuller* (2023) 15 Cal.5th 237, 255.) Here, the question is whether it is reasonably probable Appellant would have obtained a more favorable result had the expert's testimony not been admitted. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)

Even disregarding the expert's opinion regarding impairment at 0.05% BAC, the evidence presented at trial established beyond a reasonable doubt that Appellant was driving a vehicle under the influence of alcohol. The following evidence establishes Appellant was under the influence of alcohol: Appellant's admission that he drank alcohol before driving, the odor of alcohol, the results of Appellant's chemical breath test, Appellant's red watery eyes, Appellant's slurred speech, Appellant's mental and physical impairments as revealed by the field sobriety tests, that Appellant hit the curb while pulling over, the opinion of Officer Voss that Appellant was impaired for purposes of driving, and the expert testimony of Ms. Diaz regarding signs of mental and physical impairment (not including her opinion regarding impairment at 0.05%). And as noted above, the jury was instructed that they were the exclusive judges of credibility, were not bound by the

///

///

expert's opinion, and could give it the weight they thought it deserved after considering the basis of the opinion.[1] Therefore, there is no reasonable probability that a more favorable outcome would have resulted with the exclusion of Ms. Diaz's testimony regarding everyone being under the influence for purposes of driving at a .05% BAC.

### IV. Fines and fees issues.

The trial court imposed a $154 fee under Government Code section 29550.1. As of July 1, 2021, this fee was repealed by Assembly Bill 1869. Because the statute authorizing the fee had been repealed at the time of sentencing, imposing the fee is an unauthorized sentence and $154 should be removed from the overall fines and fees imposed. It also appears that the Court imposed another fee that no longer exists—the $25 Administrative Screening Fee under Penal Code, section 1463.07, which was repealed September 23, 2021. Subtracting these fees leaves total fines and fees of $1954.

### CONCLUSION

There is no reason to reverse based on the admission of the expert's opinion. The issue was not properly preserved for appeal. Even if it had been, there has been no legislative determination that such testimony is excluded from consideration of the Vehicle Code section 23152, subdivision (a), count. And even if admission of the opinion was erroneous, it was harmless error on this record. The trial court is directed to reduce the overall fines and fees imposed to $1954.

The judgment is AFFIRMED with directions.

_____
ALBERT T. HARUTUNIAN III
Presiding Judge, Appellate Division


_____
MARYANN D'ADDEZIO
Judge, Appellate Division

---

[1] We agree with the dissent that it was error for the prosecution to argue, albeit briefly, that the expert's opinion about impairment at .05 was "the widely accepted opinion in the legal community." But as the dissent recognizes, Appellant did not object to this vouching, and it therefore was not preserved for appeal. If there had been an objection, it could have been easily corrected as lacking in evidentiary support. Even without the objection, Appellant was free to argue that no evidence of the legal community's opinion had been presented.

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**

**BIRCHAK, J., dissenting**:

I respectfully dissent with the majority, with the exception of the issue related to fines and fees under section IV of the majority opinion.

The legislature chose a blood alcohol content ("BAC") of .08% to be the level where BAC alone can justify a conviction. They did so by setting that as the level for the per se count[2] under Vehicle Code section 23152, subdivision (b) and by creating a presumption for the generic count[3] under Vehicle Code section 23152, subdivision (a), through Vehicle Code section 23610. This is a legislative determination. Allowing Ms. Diaz to testify that everyone is under the influence for purposes of driving at .05% BAC was contrary to this legislative determination. Allowing an expert to testify contrary to a legislative determination is a violation of separation of powers. (*People v. Vangelder* (2013) 58 Cal.4th 1.) Therefore, the trial court erred in allowing the testimony and should be reversed.

This dissent is about what experts are allowed to permissibly testify to, not whether a BAC above .05% can lead to conviction; the law is clear it can. If it were just a question of substantial evidence, I would find that there was substantial evidence to support the jury's finding of guilt on the generic count. The striking the curb combined with the odor of alcohol, slurred speech, red and watery eyes, and the BAC, when combined all support the jurors' finding of guilt on the generic count when combined with a BAC of .05%.

### I. The legislature has determined that to rely on BAC percentages alone,
### the BAC must be .08% or above.

**A. This issue was preserved by the in limine motion and the ruling upon it.**

Through in limine motions, the defense moved to prohibit the prosecution expert from stating that all individuals are impaired for purposes of driving at .05% BAC, as it is a misstatement of law. The trial court denied that motion.

---

[2] Throughout this dissent the phrase "per se count" will be used to refer to Vehicle Code section 23152, subdivision (b). As that terminology has been consistently used by the California Supreme Court to describe the differences between the counts.

[3] Throughout this dissent the phrase "generic count" will be used to refer to Vehicle Code section 23152, subdivision (a). As that terminology has been consistently used by the California Supreme Court to describe the differences between the counts.

I agree with the majority that an analysis of whether an in limine motion preserves error should be considered under *People v. Brown* (2003) 31 Cal.4th 518 and *People v. Morris* (1991) 53 Cal.3d 152. But I disagree with their analysis as to the *Morris* factors in this case.

The defense raised the specific legal grounds of exclusion based on misstatement of the law. Testimony that is contrary to a legislative determination is a subset of misstatement of law. It is sufficient to notify a trial court of the complained of error.

The objection was also at a time the trial judge could "determine the evidentiary question in its appropriate context." The trial court was made aware of the expert's report and the proposed testimony from it. The People affirmed that the expert was likely to testify in that fashion. The context was sufficiently clear to determine whether this statement would be contrary to the law.

**B. The standard of review for whether there is a legislative determination is de novo, not abuse of discretion.**

Whether testimony is contrary to law or whether there is a legislative determination are legal issues. "Except to the extent the trial court bases its ruling on a conclusion of law (which we review de novo), we review its ruling excluding or admitting expert testimony for abuse of discretion." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) Since the defense's argument was that the testimony would mislead the jury as to the law, inherent in the denial is a conclusion of law—whether the testimony would misstate the law. Therefore, as to that portion of the analysis, the standard is de novo.

Even if the issue was not a strictly legal determination, "the court's discretion is not unlimited, especially when, as here, its exercise implicates a party's ability to present its case. Rather, it must be exercised within the confines of the applicable legal principles." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) "When, as here, a trial court's decision reflects an unawareness or misunderstanding of the full scope of its discretion, the court has not properly exercised its discretion under the law. [citation omitted] In such situations, the trial court's decision "'is subject to reversal.'" (Ibid.)" (*Yost v. Forestiere* (2020) 51 Cal.App.5th 509, 530.) If there is a legislative determination, it would not be within the trial court's appropriate discretion to allow testimony contrary to such a legislative determination. "It is

-11-

hornbook law that a "court's authority to second-guess the legislative determinations of a legislative body is extremely limited. It is a 'well-settled principle that the legislative branch is entitled to deference from the courts because of the constitutional separation of powers.'"" (*People v. Vangelder* (2013) 58 Cal.4th 1, 34.) And therefore, allowing the testimony contrary to a legislative determination a misunderstanding of the scope of the trial court's discretion and would be an abuse of discretion.

**C. Considering the driving under the influence statutes together demonstrates the legislative determination.**

The California Supreme Court in *Burg v. Municipal Court* described the setting of the percentage of blood alcohol for the per se offense as a legislative determination. "Scientific evidence and sad experience demonstrate that any driver with 0.10 percent blood alcohol is a threat to the safety of the public and to himself. [citations omitted] Section 23152, subdivision (b), represents a **legislative determination** to that effect." (*Burg v. Municipal Court* (1983) 35 Cal.3d 257, 267–268.) The Court in *Burg* discussed that the legislature could have selected .05% percent for that level. (*Ibid.*) "At least two states and several foreign countries have established standards between 0.05 percent and 0.08 percent. We have no difficulty concluding that the 0.10 percent figure fixed by section 23152, subdivision (b), is rationally related to exercise of the state's legitimate police power." (*Ibid.*) The modification of the BAC down to .08% does not make it any less of a legislative determination. This is the level that the legislature has determined that BAC **alone** justifies a conviction.

In addition to the per se count, the legislature created presumptions to evaluate whether someone is driving under the influence for the generic count. In those presumptions, they describe how a BAC of between .05-.08% can be used. "If there was at that time 0.05 percent or more but less than 0.08 percent, by weight, of alcohol in the person's blood, that fact **shall not give rise to any presumption** that the person **was** or was not **under the influence of an alcoholic beverage**, but the fact **may be considered with other competent evidence** in determining whether the person was under the influence of an alcoholic beverage at the time of the alleged offense." (Veh. Code, § 23610, subd. (a)(2).) This is additional evidence that the legislature has determined that BAC alone

-12-

is not enough for being under the influence until that BAC is .08% or above. It requires other competent evidence in determining whether a defendant is under the influence of alcohol. While the People cited to this section, they did not address the language of that BAC not giving rise to any presumption or the requirement in it for other competent evidence. This is another indication of what BAC the legislature found was necessary to sufficient for conviction by itself.

Because there appears to be potentially some ambiguity in the language of these statutes, we should look to rules of statutory construction.

Much of the People's argument hinges on the differences in the per se count and the generic count, and that the per se count does not include the language 'under the influence'. But courts "do not construe statutes in isolation, but rather read every statute 'with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness.'" (*People v. Pieters* (1991) 52 Cal.3d 894, 899.) In determining whether there is a legislative determination about when blood alcohol level alone is enough, courts should look at the language of the per se count, the generic count, and Vehicle Code section 23610 together. Reading the generic count with section 23610, subdivision (a)(2), supports the interpretation that there is a legislative determination that for a finding of under the influence from BAC alone the BAC must be .08% or above because it allows a presumption at BAC .08% or higher, but does not without other competent evidence allow for a presumption at .05%.

The history of amendments to the law related to driving under the influence is also important for analyzing whether there was a legislative determination. This is especially true given *Burg*'s language and the later amendment of the per se count and presumption down to .08% BAC from .10% BAC. "It is a settled principle of statutory construction that the Legislature 'is deemed to be aware of statutes and judicial decisions already in existence, and to have enacted or amended a statute in light thereof.'" (*People v. Scott* (2014) 58 Cal.4th 1415, 1424.) The California Supreme Court discussed in *Burg* that the legislature could have selected a BAC of .05% or .08%. "At least two states and several foreign countries have established standards between 0.05 percent and 0.08 percent. We have no difficulty concluding that the 0.10 percent figure fixed by section 23152, subdivision (b), is rationally related to exercise of the state's legitimate police power." (*Burg v.*

-13-

*Municipal Court* (1983) 35 Cal.3d 257, 267–268.) Under *Scott*, the legislature was presumed to be aware of Burg and this language when they chose to reduce the BAC to .08%. Meaning they were aware of the possibility of selecting .05%—and aware that other states had done so—yet they chose to select .08% as the BAC level where nothing more than BAC was necessary for a conviction under the per se count and as the level where there is a presumption under the generic count.

To interpret the state of California law to be that everyone is under the influence for the purposes of driving would make both the per se count and section 23610, subdivision (a)(2), meaningless. "An interpretation that renders statutory language a nullity is obviously to be avoided." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 357.) If the legislature intended to allow individuals to be convicted based on a BAC of .05% alone under the generic count, why would there be a need for the per se count?

Treating the law in this fashion would go against the explanation for the per se count given in *Burg*. In describing why the legislature created the per se count—despite having presumptions similar to those under section 23610—the court discussed how the presumptions

> which considerably assisted the prosecution of 'driving under the influence' cases, proved inadequate in many respects. Under them, the ultimate question was defined in terms of the defendant's subjective behavior and condition: "Was the defendant under the influence at the time he drove?" Celerity and certainty of punishment were frustrated by the ambiguity of the legal criteria; no matter what his blood-alcohol level, a defendant could escape conviction merely by raising a doubt as to his intoxication."
>
> *(Burg v. Municipal Court* (1983) 35 Cal.3d 257, 263.)

Other than the presumption being lowered from .10% to .08%, the state of the law on the generic count has not changed since *Burg*.

This interpretation would also be contrary to cases the People cite in their briefing. The People cite to *People v. Grabham* (2021) 68 Cal.App.5th 549, 551, for the proposition that the per se count and generic count are different. And cite to a portion of *Grabham* describing the per se count as requiring "different (**and lesser**) evidence to sustain a conviction" than the generic count. (*Id.* at p. 561.) Finding the law is that everyone is under the influence for driving at .05%, flips the

-14-

analysis of *Grabham* to the generic count requiring less evidence. They also cite to *People v. Lewis* (1993) 148 Cal.App.3d 614, 619, which distinguishes between the two as the per se count does not require evidence of impairment. If the only necessary showing for the per se count is BAC, and the generic count requires something more—impairment—how can impairment be shown by simply stating a BAC? Allowing that would erase the point of the per se count.

Interpreting the law to allow BAC alone to be sufficient to find under the influence for purpose of driving would also make a nullity of section 23610, subdivision (a)(2). "A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action. A presumption is not evidence." (Evid. Code, § 600, subd. (a).) Inserting this definition of presumption into section 23610, subdivision (a)(2), would have the language read "If there was at that time 0.05 percent or more but less than 0.08 percent, by weight, of alcohol in the person's blood, that fact shall not give rise to any [assumption of fact] that the person was or was not under the influence of an alcoholic beverage, but the fact may be considered with other competent evidence in determining whether the person was under the influence of an alcoholic beverage at the time of the alleged offense." Telling jurors that everyone is under the influence for purposes of driving at .05% would make the language about a lack of presumption meaningless. It would also make the language regarding a requirement of other competent evidence meaningless.

These rules of statutory construction support a finding that the legislature has determined that the BAC necessary to use BAC alone is .08%, not .05%.

**D. As there is a legislative determination about when BAC alone can be used, it is a separation of powers violation to allow an expert to testify contrary to that determination.**

Because there is a legislative determination, allowing this testimony violated state constitutional separation of powers. (See *People v. Vangelder* (2013) 58 Cal.4th 1.) "It is hornbook law that a "court's authority to second-guess the legislative determinations of a legislative body is extremely limited. It is a 'well-settled principle that the legislative branch is entitled to deference from the courts because of the constitutional separation of powers.'"" (*Id.* at 34.) And "just as that legislative determination is not subject to nullification by courts, nor is it subject to nullification by

a jury at the invitation of an expert witness . . .." (*Id*. at 38.) This is true even when the expert holds legitimate scientific reservations about the legislative determination. "Although Dr. Hlastala may hold scientifically based reservations concerning these legislative conclusions, we must defer to and honor the Legislature's reasonable determinations made in the course of its efforts to protect the safety and welfare of the public. As our Court of Appeal has observed, 'The fact that the current state of scientific knowledge has not settled the ongoing scientific debate as to the best method of measuring inebriation does not preclude the Legislature from regulating driving based on conflicting scientific theories.'" (*Id*. at 34.)

## II. As it is a misstatement of law to say that everyone is under the influence for purposes of driving at .05% BAC and the expert exceeded the scope of her proper opinion, it was an abuse of discretion for the trial court to allow the testimony even if there is no legislative determination of when BAC levels alone can be used.

**A. As matter of law, not everyone is under the influence for purposes of driving at a .05 BAC or above.**

The statement that every person at a .05% BAC is driving under the influence is also a misstatement of case law. ""To be 'under the influence' within the meaning of the Vehicle Code, the liquor . . . must have so far affected the nervous system, the brain, or muscles as to impair to an appreciable degree the ability to operate a vehicle in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties." (*People v. McNeal* (2009) 46 Cal.4th 1183, 1192–1193.) This language is not language that dictates a particular fixed standard; it calls for an individualized determination by each trier of fact.

> There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The terms 'ordinary care,' 'reasonable prudence,' and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper

-16-

instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury.

*Grand Trunk Ry. Co. of Canada v. Ives* (1892) 144 U.S. 408, 417 [12 S.Ct. 679, 682–683, 36 L.Ed. 485].)

The expert's—and prosecution's—statements that because everyone suffers a level of impairment at .05% everyone is under the influence at .05%, do not fit with these long-standing principles of how the determination is to be made if a person is acting with the care of an ordinarily prudent and cautious person. This is not a type of determination that suits itself to a 'scientific' opinion because of the fluidity that the law requires of this type of determination.

The People's arguments about the counts being different, supports—instead of contradicts— that it is a misstatement of law to say a BAC of .05% alone is proof being under the influence. One of the cases they cite for the purpose of showing the offenses are different explicitly indicates that someone with a .10% BAC may not be 'under the influence.' "The court held the two subdivisions are not the same offense, explaining that section 23152(b) has a distinct "essence" from section 23152(a) because "a driver with a blood-alcohol level of 0.10 percent or more commits an offense under [23152(b)], even though he may have the ability to drive his vehicle with the caution characteristic of a sober person." (*People v. Grabham* (2021) 68 Cal.App.5th 549, 555–556 citing *Wallace v. Municipal Court* (1983) 140 Cal.App.3d 100.)

The cases cited by the People for the position that it is not a misstatement of law to say that everyone is under the influence for purposes of driving at .05% do not support that position. The People cited *People v. Lachman* (1972) 23 Cal.App.3d 1094, and *People v. Taylor* (1960) 185 Cal.App.2d 704, in support of their argument that it is not a misstatement of law to say everyone is under the influence at .05% BAC. The portion of that cases they cited described what an expert testified to, not a particular holding by the appellate court.

-17-

The *Taylor* case is not even about the admissibility of an expert opinion, it is about potential prosecutorial misconduct in argument. As the People pointed out in their briefing, "It is axiomatic that cases are not authority for propositions not considered." (*People v. Ault* (2004) 33 Cal.4th 1250, 1268, fn. 10.) Additionally, the testimony of the doctor in that case was "The doctor testified that between .05 and .15 there appears a deficiency in judgment and vision and there is a slowing of the reflexes." (*People v. Taylor* (1960) 185 Cal.App.2d 704, 706.) That opinion is a far cry from every individual is under the influence for purposes of driving at .05% BAC. Instead, it reads as if that doctor would have testified that everyone was under the influence at .15%, not at .05%, or that no one is under the influence below .05% and people only start becoming under the influence at .05%.

While *Lachman* did at least deal with the admissibility of an expert opinion, a careful read of the language in *Lachman* undercuts the People's position. "At bench the chemist, an experienced researcher in the significance of alcohol readings, testified that 'an individual with a blood alcohol percentage falling with this range [from .10 to .15 per cent blood alcohol] will be probably under the influence of alcohol, for it is within this range, if not in the previous .05 to .10 range, that all persons will come under the influence of alcohol. ...' [citations omitted] It can be said with substantial assurance that a person with 0.10 per cent or more alcohol in his blood is more likely than not under the influence of intoxicating liquor." (*People v. Lachman* (1972) 23 Cal.App.3d 1094, 1098.) The People appear to be misreading this case as the expert saying everyone at .05-.10 will come under the influence of alcohol. Looking at the grammar it is "an individual with a blood alcohol percentage falling with this range [from .10 to .15 per cent blood alcohol] will be probably under the influence of alcohol, for it is within this range, . . ., that all persons will come under the influence of alcohol." The reference to .05-.10 is "if not in the previous .05 to .10 range" which reads as some individuals may be under the influence but not all would be. It is also important to note that the expert in this case did not opine about 'for purposes of driving portion' but only the under the influence portion.

I did not find any cases permitting testimony such as was presented by Ms. Diaz in this case including the 'for purposes of driving' language. It is informative that the People went back to cases

from 1960 to try to justify the position and have not presented any cases where an expert was permitted to testify as was done by Ms. Diaz here.

**B. There was no showing of any particularized expertise as to what driving in the "manner like that of an ordinarily prudent and cautious person in full possession of his faculties" means.**

Ms. Diaz presented sufficient foundation to testify as an expert on toxicology, not driving. The defense did not object to her foundation for purposes of admissibility, so that is not an independent basis of reversible error. I am addressing this because the majority analyzes the case from the admissibility of expert testimony framework and this lack of foundation is a fundamental flaw in allowing her opinion.

The foundation given for her testimony supports her giving an opinion that the defendant was under the influence of alcohol. "Opinions of qualified medical doctors as to whether an individual was intoxicated or not predicated upon the percentage of alcohol in the individual's blood, though not conclusive, are admissible when there is a proper preliminary showing that the blood tests upon which such opinions have been predicated have been properly conducted." (*Lawrence v. City of Los Angeles* (1942) 53 Cal.App.2d 6, 8–9.) While she is not a doctor, Ms. Diaz's background seems sufficient to testify about the effects of substances on an individual.

But what Ms. Diaz's foundation did not support is why her training, experience, or education, would add something to the jury's inquiry as to what the operation of a vehicle in a manner like that of an ordinarily prudent and cautious person in full possession of his faculties is. "Expert testimony will be excluded """when it would add nothing at all to the jury's common fund of information, i.e., when 'the subject of inquiry is one of such common knowledge that men of ordinary education could reach a conclusion as intelligently as the witness.'""" (*Burton v. Sanner* (2012) 207 Cal.App.4th 12, 19.) As mentioned above, no case has been cited, nor have I found one allowing a toxicologist to opine as to the 'for the purposes of driving' portion of the under the influence analysis. While it is easy to envision such foundation being laid for law enforcement officers based on experience observing drivers, nothing similar was presented for Ms. Diaz and it seems far outside the scope of training, experience, or education for a toxicologist.

-19-

Part of the majority's reasoning is focused on Ms. Diaz's opinion not being one of law but of fact. But as discussed above, the question of under the influence of driving is not a scientific one, but a legal one.

While I disagree with the interpretation that Ms. Diaz's opinion was one of fact not law, even if that interpretation is accurate, her opinion was improper. As discussed above, the determination of the standard of an ordinarily prudent and cautious person has long been viewed as a matter of determination for the jury. "Critically, '[e]ven if an expert's opinion does not go to a question of law, it is not admissible if it invades the province of a jury to decide a case.'" (*People v. Rouston* (2024) 99 Cal.App.5th 997, 1010.)

> Expert opinions which invade the province of the jury are not excluded because they embrace an ultimate issue, but because they are not helpful (or perhaps too helpful). "[T]he rationale for admitting opinion testimony is that it will assist the jury in reaching a conclusion called for by the case. 'Where the jury is just as competent as the expert to consider and weigh the evidence and draw the necessary conclusions, then the need for expert testimony evaporates.' [Citation.]" [citations omitted] In other words, when an expert's opinion amounts to nothing more than an expression of his or her belief on how a case should be decided, it does not aid the jurors, it supplants them.
>
> *Summers v. A.L. Gilbert Co.* (1999) 69 Cal.App.4th 1155, 1183.

Here Ms. Diaz's opinion—legal or not—reached too far into the realm which is the jury's purview.

## C. While abuse of discretion strongly favors affirming a decision, the analysis must be in the context of the law at issue.

A court's discretion "must be exercised within the confines of the applicable legal principles." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) "[W[e cannot determine whether a trial court has acted irrationally or arbitrarily in [it's decision] without considering the legal principles and policies that should have guided the court's actions." (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377.) Here given how in conflict with the

/ / /

law Ms. Diaz's opinion was and how far it reached into jury's role, it was an abuse of discretion to allow the testimony.

### III. Because of how the statements were used in closing argument, the error was not harmless.

What harm analysis should be applied does not differ whether there is a legislative determination or simply an abuse of discretion for the admission of expert opinion. Either error "requires reversal only if there is a reasonable probability that the error contributed to the verdict." (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1143 citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) The California Supreme Court has "made clear that a "probability" in this context does not mean more likely than not, but merely a reasonable chance, more than an abstract possibility." (*Richardson v. Superior Court* (2008) 43 Cal.4th 1040, 1050.)

In closing argument, the People argued "And the science did tell us. Jasmine Diaz's expert opinion, and it's not just her opinion, it's the widely accepted opinion in the legal community, is that everybody is impaired at a .05 percent or greater for purposes of driving. Again, it's not for being out in the world – and having fun and talking to people. For purposes of driving you are impaired at a .05 percent." Had the People not argued this in closing, this would be a concurrence instead of a dissent, because the reasons stated in the majority opinion would be sufficient to find there was no likelihood of a more favorable result.

This argument is problematic. It misstates the law as discussed above. The statement that it is widely accepted in the legal community is improper vouching by the prosecution, as there was no evidence about acceptance in the legal community. Nor would such evidence have been permissible as it would infringe on the court's duty and authority to explain the law. It also gives the impression of a lower burden for the prosecution by allowing for an assumption of fact of under the influence without the additional competent evidence required under section 23610, subdivision (a)(2).

To be clear, these errors were not preserved as there was no timely objection. I am not considering them as a basis of reversal. But the errors do appropriately factor into the analysis of

/ / /

/ / /

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**

whether there was harm. And without the admission of the expert opinion about .05% BAC, there is a reasonable probability that none of these errors would have occurred. And there is a reasonable probability these errors—as well as just the testimony itself—affected the verdict.

The trial court took no steps to minimize the harm of this error, such as instructing as to the language under Vehicle Code section 23610, subdivision (a)(2), that there is not a presumption between .05-0799%. Had the trial court given such an instruction, this would be a concurrence instead of a dissent.

## CONCLUSION

Because the toxicologist's opinion conflicted with the state of the law, it was an abuse of discretion to allow the testimony as we analyze abuse of discretion in the confines of the legal principles applicable to a case. There is a reasonable possibility that this error contributed to the verdict. Therefore, the case should be reversed and remanded for a new trial on the generic count.

_____
FRANK L. BIRCHAK
Judge, Appellate Division

**DECISION/STATEMENT OF REASONS (CCP § 77(d)) BY THE COURT**

Counsel for Appellant, Christopher: Turntine:

WILLIAM R. BURGENER, ESQ.
3990 OLD TOWN AVE C-105
SAN DIEGO, CA  92110


Counsel for Respondent, The People:

KIMBERLY ROTH
OFFICE OF THE DISTRICT ATTORNEY
APPEALS UNIT
330 W. BROADWAY, STE. 860
SAN DIEGO, CA 92101